IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| ALICE FAYE COX | PLAINTIFF |
| V. | CASE NO: 1:03CV628 |
| DESOTO COUNTY SHERIFF'S DEPARTMENT and DESOTO COUNTY, MISSISSIPPI | DEFENDANTS |

*CONSOLIDATED WITH*

| | |
|---|---|
| ALICE FAYE COX | PLAINTIFF |
| V. | 1:05CV323 |
| JAMES RILEY, individually and in his official capacity as Sheriff of DeSoto County, Mississippi, JOHN CHAMPION, individually, CHARLES BROWN, and JAMES DUNN, individually and in their official capacities as deputy sheriffs and jail administrators of DeSoto County, Mississippi | DEFENDANTS |

## ORDER

This cause comes before the court on the motion of defendants, The Desoto County Sheriff's Department and Desoto, County Mississippi (collectively "Desoto County"), for summary judgment.

Plaintiff, Alice Faye Cox, was a secretary in the Desoto County Sheriff's office. Cox was transferred to a position working in the jail. On August 18, 2003Cox filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging her age and refusal to campaign for the sheriff's re-election resulted in her transfer.

In October Cox was injured at work while opening a door and was off work for approximately three months.  During that period she filed suit.  Also during that period James Dunn, the head of internal affairs and personnel matters for the Desoto County Sheriff's Department asked one of his officers to review tapes of Cox working at the jail to ascertain "if anything was happening out of the way and [to see] how Ms. Cox opened the door."

On October 30, 2004 Cox reported witnessing a jailer hit an inmate that was handcuffed and subdued.  Cox's report started an internal affairs investigation into the incident.  The results of that investigation were turned over to the District Attorney's office which also conducted an investigation.  Both investigations determined the jailer had not acted improperly.  During the investigation it was also determined that Cox had given inconsistent statements.  On December 7, 2004 the Sheriff's Department Supervisory Board terminated Cox for giving a false report.  Cox appealed that ruling which was affirmed by the Executive Board.

Cox then amended her complaint to include a claim that she was terminated in retaliation for filing an EEOC complaint.  At this time Cox also filed for unemployment benefits.  The Mississippi Employment Security Commission determined Cox was not eligible because she was discharged for misconduct.  She initially appealed that decision to Circuit Court.  Eventually that appeal was voluntarily dismissed.

Desoto County filed a motion for summary judgment in this court arguing the finding by the Mississippi Employment Security Commission collaterally estopped Cox's termination suit.  This court agreed granting that motion.  Cox's claims for wrongful transfer proceeded to trial.  At trial the jury awarded damages based on Cox's claim she was transferred because of her age.  The jury rejected her claim that she was transferred based on her failure to campaign for the

sheriff.

Cox appealed the court's summary judgment order. The Fifth Circuit affirmed in part and reversed in part that decision. The Fifth Circuit held that the Age Discrimination in Employment Act ("ADEA") claims were not limited by the state agency ruling.

Following remand and additional discovery Desoto County filed the instant motion. Desoto County argues it is entitled to summary judgment because Cox can not establish a *prima facie* case of discrimination or alternatively that even if she can establish a *prima facie* case Cox can not carry her ultimate burden in light of Desoto County's offered legitimate non-discriminatory reason for her firing.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

Cox attempts to establish her claim through circumstantial evidence triggering the familiar *McDonnell Douglas* burden shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S.

3

792 (1973). In order to make out a *prima facie* case of retaliation under the ADEA Cox must show: (1) she engaged in an activity protected by the ADEA; (2) she suffered an adverse employment action; and, (3) a causal connection exists between the protected activity and the adverse employment action. *Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 540 (5th Cir. 1998).

There is no dispute that Cox engaged in a protected activity when she filed suit alleging she was terminated because of her age or that she suffered an adverse employment action when she was terminated.

Cox alleges the temporal proximity between her protected activity and the adverse employment decision show the necessary causal connection. Additionally, Cox argues that the investigation leading to her termination was flawed and was a "witch hunt."

Temporal proximity between a protected activity and an adverse employment action can establish the necessary causal connection. *See Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007). However, temporal proximity only proves causation "when the protected act and the adverse employment action are 'very close' in time." *Id*. (quoting *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

In this case Cox filed her EEOC complaint in August 2003. She was not terminated until December 2004. This sixteen month period does not meet the 'very close' test handed down by the Supreme Court. *See Clark County School Dist.*, 532 at 273-74 (holding that a two or three month period might be close enough to prove causation, but a twenty month window was too long to establish *prima facie* causation); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (holding a five month period by itself does not support an inference of

4

causation).

Instead of distinguishing this and other similar cases Cox argues the court should look at a different event in calculating the time between the protected activity and the adverse employment action. Cox asks the court to look at date when Dunn asked his employee to review the tapes of Cox working. Cox argues this event was designed to find an excuse to fire her.

However, no matter the reason for the investigation[1] courts must look only to adverse employment actions in deciding if temporal proximity has established a causal connection. In the retaliation context adverse employment actions are "action[s] that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *McCullough v. Houston County Tex.*, 297 Fed. Appx. 282, 288 (5th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). This initial investigation does not meet the standard required for an event to become an adverse employment action. It would therefore be improper for the court to consider it in determining whether a temporal proximity causal connection exists in this matter.

Cox next states Desoto County's policy was to encourage employees to report abuse of inmates and that under such a policy "[t]he witch hunt and hounding that Cox endured because of her report . . . makes no sense whatsoever unless it was retaliation" for her filing of an EEOC complaint. The court deduces the basis of Cox's argument is that she actually saw an inmate

---

[1] The court does not reach the question of whether there is any evidence that Dunn ordered the investigation in order to find an excuse to terminate Cox or whether the investigation was in response to Cox's accident. The court notes the investigation found no problems with Cox's work activities and resulted in no action being taken against her.

being beaten and that Desoto County obviously would not have fired her reporting factually accurate information about a crime unless it was pretext for its desire to fire her for filing an EEOC complaint. She attempts to couple this with the fact the ultimate decision makers knew about her complaint and were influenced by the complaint to fire her.

Under Fifth Circuit law a plaintiff can prove a causal link if "the evidence . . . show[s] that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). A majority of the board members who voted to terminate Cox did not have knowledge of Cox's complaint.

Even though some of the ultimate decision makers did not have knowledge of the complaint, causation might still established by showing those decision makers "merely 'rubber stamped' a recommendation to terminate made by an employee with knowledge of the complaint." *Id*. (quoting *Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996)).

None of the depositions submitted to the court show the board members rubber stamped Cox's termination. Cox relies on an affidavit submitted by Janet Taylor. Taylor, a former jail administrator, stated:

> While there I sat on boards of review which heard appeals from employees regarding disciplinary and termination matters. Before every board hearing, all of the board members knew what the result was going to be. We were told what to do by either Chief Deputy Brown or Sheriff Riley, himself. The sheriff always knew what was going on and Chief Brown constantly kept him informed about all matters.
> As a matter of fact, the board hearing process was so unfair that I began sending my assistant to sit in my place because I could not stomach the unfairness of the process. There were a few occasions out of all the boards I sat on in which I did not follow orders and vote as I was told to. The sheriff would cuss me out in instances like that.

> I have never known any of the boards to reverse a supervisor's actions related to discipline or termination, although they sometimes varied in how much discipline they might give out.
> The sheriff has occasionally overturned board decisions, but it was usually instances where someone had campaigned for the sheriff, was somebody's relative, or for other personal reasons not related to performance or conduct of the individual involved.

The court finds this statement to be inadmissible and thus improper summary judgment evidence. Taylor was terminated from the sheriff's department prior to any events relevant to this matter. She has no personal knowledge of how the boards were constituted or operated at the time of Cox's termination. The evidence Taylor offers does not fit within the permissible bounds of Federal Rule of Evidence 404.

Additionally, this evidence does not fall within Federal Rule of Evidence 406 which allows evidence of habits. While Taylor initially uses the word "always" in describing the boards' actions she later backs away from that position. Taylor admits that the boards sometimes broke from the decisions appealed to them. As used in Rule 406 habit means "a specific reation to a specific set of stimuli that is reflexive, repeated, and invariable in nature." *Pursley v. Bretke*, 114 Fed. Appx. 630, 634 (5th Cir. 2004). Taylor's

Based on the decision to exclude this evidence there is nothing to show the boards simply rubber stamped the decisions presented to them.

Taking the evidence in the light most favorable to Cox there are problems with the two investigations into the incident at the jail. The findings of those investigations were presented to the boards that decided to terminate Cox. As such her termination may have been based on faulty information. The general rule under Mississippi law is that an individual may be fired for a good reason, a bad reason, or no reason at all. *See DeCarlo v. Bonus Stores, Inc.*, 989 So.2d

7

351, 354 (Miss. 2008) (citing *Kelly v. Miss. Valley Gas Co.*, 397 So.2d 874, 875 (Miss. 1981)). A jury might consider that a termination based on a faulty investigation was a termination for a bad reason. However, it was not a termination for a discriminatory reason as required to proceed under the ADEA.

Nothing in the record links Cox's complaint with her termination. Her termination did not occur for sixteen months after she filed her complaint. Further there is no evidence the decision making boards knew about the complaint. Based on this evidence Cox can not carry her burden of establishing a causal link between her EEOC complaint and her termination.

Desoto County's motion for summary judgment is GRANTED.

This the 13th day of May, 2010.

                                      **/s/ MICHAEL P. MILLS**
                                      **CHIEF JUDGE**
                                      **UNITED STATES DISTRICT COURT**
                                      **NORTHERN DISTRICT OF MISSISSIPPI**